UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID M. GRIZZEL,

    Plaintiff,

v.       Case No. 2:10-cv-293
    HON. TIMOTHY P. GREELEY

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## OPINION

In July of 2008, David M. Grizzel filed an application for Disability Insurance Benefits (DIB) under the Social Security Act, 42 U.S.C. §§ 416i and 423. See transcript of administrative proceedings at page 14 (hereinafter Tr. at __). Plaintiff's claim was initially denied and he requested a hearing before an Administrative Law Judge (ALJ). Tr. at 65. The hearing was held before ALJ Robert L. Bartelt on August 5, 2009. Testifying at the hearing were Plaintiff, impartial Medical Expert Allan L. Hauer, and Vocational Expert David P. Ostwald. Tr. at 89, 92. On September 29, 2009, ALJ Bartelt issued a decision denying Plaintiff's claim for DIB. Plaintiff then sought review by the Appeals Council, which was denied. Tr. at 1-6. Thereafter, the ALJ's decision became the final decision of the Commissioner of Social Security. Plaintiff filed the instant action seeking judicial review of the denial of his claim for DIB pursuant to 42 U.S.C. §§ 405(g). The matter has been fully briefed and the parties have consented to Magistrate Judge jurisdiction.

Plaintiff was fifty-eight years old at the time of the ALJ's decision. Tr. at 58, 104. Plaintiff has worked as a carpenter's helper, truck driver, psychiatric care aid, a stocker, and a

kitchen helper. Tr. at 163-75. Plaintiff completed high school and college and has a Master's Degree. Tr. at 14, 27, 58, 144. Plaintiff's alleged disability is the result of Carpal Tunnel Syndrome (CTS) and problems with his back, right shoulder, right knee, and right thumb, as well as depression. Tr. at 139. Plaintiff alleged that CTS and the loss of manipulation and dexterity due to his severed right thumb tip prevented him from continuing to be a professional truck driver. Plaintiff's Brief at 3. Plaintiff claimed that neurologist Dr. Debra Morley performed the nerve conduction study and stated that his CTS was worsening. Plaintiff asserted that he was apprehensive of having surgery for his CTS. *Id*. at 4. However, Plaintiff stated that when he found out he could have the surgery performed free of charge, he scheduled the CTS surgery for May 27, 2011, at Veterans Hospital in Milwaukee. Plaintiff's Reply at 2.

The ALJ found that Plaintiff had "a combination of impairments that is 'severe.'" Tr. at 53. However, the ALJ concluded that Plaintiff retained the capacity to perform medium work because he found that Plaintiff had:

> the residual functional capacity to lift/carry/push/pull up to 50 pounds occasionally and up to 25 pounds frequently; and stand/walk six hours of an eight-hour workday, with normal breaks (which are generally provided every two hours, plus a meal period)(medium work (20 CFR 404. 1567(b)). If an individual can perform medium work, he can generally also perform light work which involves lifting no more than 20 pounds occasionally and 10 pounds frequently.

Tr. at 54, 56.

In reaching this finding, the ALJ considered the opinion of Tama Abel, M.D., who had performed a consultative examination on Plaintiff and found that Plaintiff had:

> normal range of notion of the [shoulder and knee] joints and the spine, …had normal gait, strength, motor, tone and sensation except the right thumb tip, and characterized the right knee and right shoulder symptoms as "mild." The claimant had no difficulty getting on and off the examination table, no difficulty heel and toe walking, no difficulty squatting and arising, no

> difficulty balancing, no difficulty hopping, and no difficulty with the tandem walk. There were no neurological deficits or evidence of nerve root irritation as far as the back was concern.

Tr. at 55, citing Tr. at 274-77.

The ALJ also considered the opinion of Robert Newhouse, M.D., who believed that "the claimant was capable of work at the medium exertion level." Tr. at 56. The State Agency physicians also reviewed the evidence of record. According to the ALJ, Plaintiff reported that as a truck driver, he walked one hour, stood three hours, sat eight hours and that the heaviest thing he lifted was twenty pounds. Tr. at 167. As a kitchen helper, Plaintiff walked/stood eight hours and lifted up to fifty pounds. Tr. at 173. Comparing the demands of Plaintiff's past work as a truck driver and a kitchen helper with his residual functional capacity (RFC), the ALJ found that Plaintiff's past work would not require him to perform activities in excess of his RFC for medium work. Tr. at 58. As such, the ALJ concluded that Plaintiff was not disabled because he remained capable of performing his past work as actually and generally performed. *Id*.

Plaintiff asserts that his disabilities limit him in accomplishing basic work activities. Plaintiff's Brief at 1. Plaintiff states that he can now only work for a few hours because of the pain that builds in his lower lumbar spine and his shoulder. *Id*. Plaintiff takes Tramadol 50 mg twice a day. *Id* at 3. However, Plaintiff admits that he has "discovered that if I religiously take my medications (600 mg per eight hours of Ibuprofen and 5 mg twice a day of a muscle relaxant) and wear a weight lifter's belt that supports my lower lumbar spine all my waking hours that I can last longer without pain. The weight lifters belt doesn't go well with my Sunday go-to meeting clothes, but who's enduring this pain anyway?" Plaintiff's Brief at 1. Plaintiff concedes that "because I hate taking drugs I sure wouldn't be taking all these pain medications." Plaintiff's Reply at 4. Plaintiff also states that he provided x-rays of the curvature of his lower lumbar spine that were taken when

he was twenty-two years old to Dr. Abel who did a consultative examination of Plaintiff.  Plaintiff indicates that Dr. Abel would not look at the x-rays.  Plaintiff's Brief at 3.  Plaintiff describes his depression as the result of "my nearly nine years of seeking employment in Michigan's Upper Peninsula I face discrimination of age, place of region, where I went to college, and nepotism."  *Id*. at 2.  Plaintiff states that he will not leave his family to search for work outside Marquette because family is very important to him.  Plaintiff asserts that if he can find a local job that will adequately support his family he will accept the job.  Plaintiff's Reply at 3.

In determining Plaintiff's ability to perform work, the ALJ weighted Plaintiff's treatment history and his diagnostic evidence of record, including his EMG, x-rays, and MRIs.  The ALJ stated that Plaintiff's diagnostic tests contained in the record were not accompanied by any clinical interpretation, such that specific correlative functional limitations could be attributed to particular impairments.  The ALJ noted that "virtually all of the alleged impairments are of very longstanding and the claimant consistently worked jobs which were medium and heavy in exertional requirements despite them."  Tr. at 57.  The ALJ also considered Plaintiff's daily activities and found that Plaintiff:

> has activities of daily living (reported just three months prior to the amended alleged onset date) consistent with an ability to work, including child care ("feed them, change diapers, bathe"), painting, dry wall, plumbing, mow grass, laundry, cleaning, bicycle repair, ride bike, shop ("hardware, plumbing parts, automotive parts, most anything for household repair"), church, swimming, "shoot hoops" daily; play drums, look for work, simple meal preparation, can do most housework and yard work "when not depressed," drive, shop for groceries, "B-ball".

Tr. at 56, citing Tr. at 147-54, 155-62.

In addition, the ALJ found that Plaintiff's claims were not fully credible because the ALJ found that Plaintiff was working as a carpenter helper four hours a day, three days a week at the

-4-

time he filed his application for disability. In addition, the ALJ noted that Plaintiff has continued to pursue employment. Tr. at 56. The ALJ also found that Plaintiff began drawing unemployment compensation in January 2008 and continues to draw unemployment in the amount of approximately $1,100 per month since the alleged onset of his disability. Tr. at 56. The ALJ found that drawing unemployment obviously adversely impacted his credibility to claim disability benefits because "in order to be entitled to unemployment, one must show both the availability and the capability to be otherwise employed." Tr. at 56. Therefore, the ALJ concluded that Plaintiff could still perform a significant number of light jobs and that the vocational expert testified that Plaintiff had transferable skills from his past work to light work. Additionally, there exist 2,000 woodworking industry positions and 15,000 electronic assembler positions in the State of Michigan, to which Plaintiff's skills could transfer. Tr. at 42-43.

This Court has jurisdiction to review the Commissioner's decision denying DIB pursuant to 42 U.S.C. §§ 405(g). The Commissioner's findings are conclusive so long as they are supported by substantial evidence. *Id*. Judicial review of the denial of DIB is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner employed the proper legal standard. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence, but less than preponderance. It has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981),cert. denied, 461 U.S. 957 (1983). This Court is required to defer to the Commissioner's decision even if there is substantial evidence in the record to support an opposite conclusion. *Key v. Callahan*, 109 F.3d 270, 273 (6th Circ. 1997). This Court is not permitted to try the case de novo, nor resolve conflicts in the evidence and cannot decide questions of credibility. *See Brainard v.*

*Secretary of Health and Human Service*, 889 F.2d 679, 681 (6th Cir. 1989). The Court must affirm the ALJ's decision, unless the ALJ applied an incorrect legal standard or made findings of fact which are not supported by substantial evidence in the record. *See Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997).

The Commissioner must follow a five step analysis when determining whether an individual qualifies as disabled. Plaintiff bears the burden of proof through the first four steps to prove his entitlement to disability benefits. The first step examines whether the claimant is performing substantial gainful activity. If he is, he is not disabled. The second step requires the Commissioner to determine whether or not the claimant suffers from a severe impairment. If he does not, then he is not disabled. At the third step, the Commissioner examines whether or not the claimant is performing substantial activity and is suffering from a severe impairment that is expected to last for more than twelve months. If the claimant meets a listed impairment, the claimant is presumed disabled. At the fourth step, the Commissioner examines whether the claimant's impairment prevents him from doing his past relevant work. If it does not, the claimant is not disabled. "If the analysis reaches the fifth step without finding that the claimant is not disabled, the burden transfers to the Secretary." *Preslar v. Secretary of Health and Human Services*, 14 F.3d 1107, 110 (6th Cir. 1994). At the fifth step, the Commissioner determines whether or not, given the claimant's impairments and an inability to do his relevant work, consideration must be given to whether there is other work which exists in the national economy which the claimant is capable of performing.

In the instant case, it was at the fourth step that the Commissioner concluded that Plaintiff does not qualify for disability benefits. The Commissioner found that Plaintiff was not disabled because he remained capable of performing his past work as actually and generally

-6-

performed. Tr. at 58. The Commissioner also made an alternative finding at step five of the sequential evaluation that Plaintiff remained capable of performing a significant number of jobs existing in the national economy. *Id*.

This Court is required to review the entire record and determine whether or not there is substantial evidence to support the ALJ's decision. A review of the evidence of record establishes that there is substantial evidence to support the Commissioner's decision. The ALJ thoroughly examined the medical evidence of record and his decision reflects a comprehensive analysis of that evidence. The records reveal that doctors performed consultative examinations on Plaintiff and concluded that Plaintiff was capable of work at the medium exertion level. Tr. at 55-56. This evidence supports the decision of the Commissioner that Plaintiff's impairment did not prevent him from doing his past relevant work. The records also reveal that the vocational expert testified that Plaintiff could perform a significant number of light jobs existing in Michigan. Tr. at 42-43. This evidence supports the finding that Plaintiff is capable of performing work which exists in the national economy. Plaintiff himself admitted that he would have CTS surgery in May 2011. Plaintiff's Reply at 2. Plaintiff received unemployment compensation. *Id* at 3. Plaintiff performed normal housework at home. Plaintiff's Brief at 2. This evidence supports the finding that Plaintiff's testimony was not fully credible.

The Court's review of the medical evidence of record and the decision of the ALJ leads to but one conclusion. There is substantial evidence to support the decision denying Plaintiff benefits. That is not to say that the evidence might not have supported the opposite conclusion. This Court, however, is not permitted to overturn the decision of the Commissioner, even if the court would have ruled differently if it was considering the evidence *de novo*. This Court's review of the

record is limited. Therefore, the Court finds that there is substantial evidence supporting the Commissioner's decision and the denial of disability insurance benefits will be affirmed.

A Judgment consistent with this Opinion will be entered.

       /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated:   July 12, 2011